## GILMORE v. BLACKBURN.

No. 14155—Opinion Filed July 17, 1923.

Rehearing Denied Nov. 6, 1923.

(Syllabus.)

1. **Appeal and Error—Basis of Judgment—Affirmance.**

It is immaterial what theory a judgment may be based upon, if under the facts and the law it is justified upon any theory, and where such is true, a judgment will not be reversed.

2. **Contracts — Corporations—Forfeiture of Pledged Stock—Action Against Pledgee for Money Paid and Dividends Earned.**

It appearing from the undisputed facts, that under a written contract plaintiff had purchased from defendant 40 shares of bank stock for $8,000, paying $2,500 in cash, and subsequently paying $100 on the balance, and assigned to defendant 35 shares of such stock as collateral security, agreeing in the written contract to give additional security by a certain date, the contract containing no provision nor authorization for forfeiture, but upon plaintiff's failure to give additional security, by the time agreed upon, defendant declares the collateral shares forfeited and procures the cancellation of same, and declares the transaction at an end, held, in the absence of a provision making the giving of additional security by the stipulated time a condition for forfeiture of the collateral, and of the amount paid, the plaintiff may maintain an action for the amount of cash paid upon the contract and for the amount which the stock has earned up to the date of the forfeiture.

Error from District Court, Pawnee County; W. B. Williams, Judge.

Action by Charles S. Blackburn against Elbert Gilmore. Judgment for plaintiff, and defendant brings error. Affirmed.

Thurman S. Hurst and L. N. Kimrey, for plaintiff in error.

McCollum & McCollum, for defendant in error.

HARRISON, J. This was an action by Charles S. Blackburn against Elbert Gilmore to recover certain sums of money paid to Gilmore on certain shares of bank stock purchased from Gilmore, which shares had been forfeited and canceled by Gilmore for nonpayment of balance of purchase price. Gilmore was president of the Guaranty State Bank of Hallett, and sold Blackburn 40 shares of said bank stock for $8,000, $2,500 cash, the balance to be paid in 12 months,

evidenced by a promissory note for $5,500. The note was temporarily secured by 35 shares of stock, reassigned by Blackburn to Gilmore as collateral, with the understanding that additional security consisting of a real estate mortgage on Blackburn's homestead was to be given by March 1, 1922. The contract was entered into November 25, 1921. Some modifying parol agreements were alleged by Blackburn to have been subsequently entered into, whereby Gilmore was to engage in selling insurance, also in buying and selling real estate, oil and gas leases, etc., and to pay Blackburn 40 per cent. of the profits. Blackburn claimed that this latter agreement modified the previous written contract, and that compliance with the latter agreement on the part of Gilmore constituted a condition upon which Blackburn was to fulfill his part of the written contract by executing the real estate mortgage by March 1, 1922.

Blackburn declined or failed to fulfill the written contract by failing to give the real estate mortgage by March 1, 1922, on the alleged ground that Gilmore had violated said modifying parol agreement. At any rate Gilmore failed to comply with the alleged parol agreement and Blackburn failed to comply with the written contract.

Gilmore forfeited and canceled the 35 shares assigned as collateral security, had Blackburn discharged as cashier and director of the bank, and Blackburn brought suit to recover the cash payments he had made on such shares, amounting to $2,600, and the accrued earnings of bank stock which he had purchased, amounting to $400, and for other expenses incurred in endeavoring to procure fulfillment of the contracts. Gilmore denied having entered into any subsequent parol agreement modifying the conditions of the written contract.

The issues were tried and submitted to the court, and judgment rendered in favor of Blackburn for the $2,500 originally paid on the stock and $100 subsequently paid thereon, and for $400 for accrued earnings of the stock from the time it was purchased up to the time of its cancellation, amounting in all to $3,000, and Gilmore appeals from the judgment.

The whole case revolves around the conditions of the written contract, which are as follows:

"This contract made and entered into this 25th day of November A. D. 1921, by and between Elbert Gilmore of the city of Hallett, in the county of Pawnee and state of Oklahoma, party of the first part, and Chas. S. Blackburn, of DeKalb and state of Illinois, party of the second part, is to the effect as follows:

"Whereas, the said party of the first part has sold unto the said party of the second part 40 shares of stock of the Guaranty State Bank of Hallett, located in the town of Hallett, county of Pawnee, and state of Oklahoma for and in consideration of the sum of $8,000, $2,500 cash in hand paid, the receipt of which is hereby acknowledged. The balance of the purchase price $5,500 to be paid within 12 months as evidenced by a certain promissory —— under even date herewith bearing interest at the rate of (8%) per cent. per annum from date. Said note to be temporarily secured by the assignment of 35 shares of the above-mentioned block of stock to the said party of the first part. The remaining portion of the purchase price to be further secured upon the arrival of Ella L. Blackburn, wife of the said party of the second part, on or before March 1, 1922, by a mortgage on certain real property in the city of DeKalb, DeKalb county, Ill., as mutually agreed upon.

"Said party of the first part agreeing with the said party of the second part to call a meeting of the board of directors of the aforesaid bank immediately and have the proper assignment and transfer of the stock duly made and issued and agreeing that the said party of the second part shall be elected on the board of directors and also elected as cashier of the said bank. Said services to begin at once and to be paid for until the first day of January, 1922, at the rate of $125 per month, and on and after the first day of January, 1922, at the rate of $150 per month, provided the above-named parties are able to do the entire work of the bank. In case they are unable to do said work in a satisfactory manner, the board of directors may hire additional help and to be further able to reduce or cut the wages of the officials in an amount within reason, but in no event shall such reduction or cut be more than $25 per month.

"It is further agreed that the said party of the first part shall be elected as president of the said bank, and is to be active in the management of the affairs of said bank, and for such services shall receive a salary of $125. Said president to supervise the management of the said bank and have charge of the note case passing upon all loans for the present under the instruction of the board of directors, but is not to be compelled to do any of the clerical work of the bank.

"It is hereby further agreed that the minority interests of the bank shall have the selection of one of the salaried officers of the bank, said majority interest to exercise such control only when said minority inter-

ests shall at least have 35 shares of the stock of the said bank.

"The party of the first part now owning and holding 60 shares of the stock in the said bank hereby further agrees to give unto the said party of the second part the right and an option to purchase an additional 20 shares of the stock in the said bank, and the price thereof to be the same as the sale price mentioned in this contract, viz., $200 per share. The said party of the second part is not to take advantage of this option and purchase the said additional 20 shares for the purpose of buying stock to sell the same, or for any other purpose other than the purpose of acquiring additional stock for his individual ownership and use.

"Witness our hand and seal the day, month and year first above mentioned.
"Elbert Gilmore, Party of the First Part.

"Chas. S. Blackburn, Party of the Second Part."

Plaintiff in error presents the following propositions:

(1) The judgment is contrary to law and the evidence.

(a) Plaintiff gave no legal reason for not delivering the mortgage. (b) Party first in default cannot sue other for subsequent breach. (c) No cause of action in conversion alleged or proven. (d) Defendant refused to rescind, and plaintiff could not rescind. (e) Defendant not bound by his election of remedies. (f) Plaintiff did not come into court with clean hands. (g) Plaintiff did not offer to do equity. (h) Findings of the court.

(2) The motion to strike and to make more definite should have been sustained.

(3) The petition did not state facts sufficient to constitute a cause of action.

(4) The demurrer to the evidence should have been sustained.

(5) The motion for new trial should have been sustained.

None of the foregoing propositions is decisive of the issue in this case.

There was conflicting testimony as to whether there was a subsequent parol agreement between the parties modifying the conditions of the written contract. There was conflicting testimony as to the conversations and agreements between the parties on the 2nd and 3rd of March, 1922, on the question as to whether Blackburn was to have further time in which to execute the real estate mortgage. There was conflicting testimony also as to other less material issues, but the undisputed facts were sufficient to sustain the judgment rendered by the trial court.

It is immaterial what theory a judgment may be based upon, if, under the facts and the law, it is justified upon any theory, and where such is true, a judgment will not be reversed.

The court had before it the following undisputed facts, to wit: Gilmore sold Blackburn 40 shares of his own personal stock in the bank; Blackburn paid $2,500 cash upon the assignment of the stock to him, and subsequently paid another $100; he reassigned to Gilmore 35 shares of stock as collateral security for the payment of the balance, $5,500, and promised to give a real estate mortgage as additional security by March 1, 1922. On March 4, 1922, Blackburn returned to Illinois for the purpose of executing the real estate mortgage. The purpose of this trip to DeKalb, Ill., was understood by both parties. The contract had not been declared breached at this time, nor had the 35 shares assigned as aforesaid for collateral been canceled, nor were they canceled until at a meeting of the board of directors on March 6, 1922, at which the following actions were taken, to wit:

"Now the board of directors finding the said bank stock duly assigned and attested as provided by the by-laws of said bank, it is hereby ordered that said bank stock of 35 shares as represented by certificate Nos. 19 (five shares). No. 22 (ten shares), No. 23 (ten shares), No. 24 (ten shares), be and hereby are ordered canceled, and stock of like amount of 35 shares be issued in lieu thereof to and in the name of the legal holder and owner thereof, Elbert Gilmore."

On March 3rd, Gilmore wrote to Blackburn a letter which contained the following:

"I hereby demand the mortgage on your residence property in DeKalb, Ill., as additional security. * * * In the event of your failure to deliver said mortgage on this demand I declare the whole unpaid purchase price due and unpaid and hereby demand payment in full. In default of which I declare said contract and sale of said bank stock forfeited by your own act inasmuch as you promised said mortgage as additional security, and (1) have not complied with your said promise."

On March 6th, Gilmore enclosed copy of the minutes of proceedings of the board of directors, which minutes contained the foregoing action by the board, and therewith enclosed a letter containing the following:

"Dear Sir:
"You will please find enclosed: * * My

notification of intention to forfeit collateral and the return of your note attached, and demand for your resignation as cashier. Your discharge. Copy of cancellation of your authority to do business for us. * * * Mr. Blackburn, this ends our business so far as I am concerned."

Under this undisputed state of facts it is of no avail to argue the question whether Blackburn had a right to bring an action to rescind, or whether his suit was an action to rescind. Blackburn had nothing to rescind. The contract had been declared forfeited by Gilmore, and the shares had been canceled by Gilmore. The contract had been rescinded and all further proceedings shut off by Gilmore himself. Thereupon Blackburn found himself in this condition: He had bought bank stock, paid $2,600 cash on it, and the stock had earned $400: the 35 shares put up as collateral had been canceled and in lieu thereof, 35 shares had been issued to Gilmore; Blackburn had been discharged as cashier by the bank and removed from the board of directors; all further negotiations between the parties had been declared ended; hence Blackburn was left with the alternative of either losing his money and his job and the amount his stock had earned, or bringing an action to recover what he had paid on his stock and what the stock had earned between the date of the written contract and the date of cancellation of the shares by Gilmore, and he chose the latter alternative; and the court gave judgment for the $2,600 paid on the stock, and for the $400 which the stock had earned between the aforesaid dates. The undisputed facts amply sustain this judgment.

It is observed that the written contract herein set out does not provide for a forfeiture in the event of failure to execute the mortgage within the time specified. The provision for giving the mortgage as additional security was not made a condition for forfeiture, nor was failure to execute such mortgage by March 1st, made a condition for forfeiture and cancellation of the shares. The written contract, on which Gilmore seems to have relied, gave him no authority to cancel the 35 shares in the event of failure to execute the mortgage by March 1st. The collateral was not forfeited on March 1st, nor had it been forfeited by March 4th, at which time Blackburn returned to Illinois for the purpose of executing the mortgage in question.

It is also observed that the written contract was not between the bank and Blackburn, but was an individual contract between Gilmore and Blackburn. Gilmore

owned the shares and sold them to Blackburn. Blackburn reassigned 35 of such shares as collateral for the balance due. The bank was not a party to this phase of the transaction, yet the bank assumed on March 6th to declare the collateral forfeited and to cancel same and to re-issue a like number of shares to Gilmore. It is unnecessary to decide whether the bank had authority to take such action. It is undisputed that it did take such action and under the undisputed facts, it is our opinion that Blackburn was damaged by such action, and that the amount he had paid plus the amount his stock had earned was not an escessive measure of damage.

Assuming that all the propositions presented here are included in the 5th assignment of error in overruling motion for new trial, it is our opinion that the motion for new trial was properly overruled.

The judgment is affirmed.

JOHNSON, C. J., and KENNAMER, COCHRAN, and BRANSON, JJ., concur.